UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

CHARLES L. NAIL, JR.
BANKRUPTCY JUDGE



_____

Federal Building and United States Post Office                    Telephone: (605) 945-4490
225 South Pierre Street, Room 211                                        Fax: (605) 945-4491
Pierre, South Dakota 57501-2463

June 30, 2008

James R. Sheeran, Esq.
Attorney for Plaintiff
Post Office Box 13306
Chesapeake, Virginia  23325-3306

Steven R. Binger, Esq.
Attorney for Plaintiff
307 West 14th Street
Sioux Falls, South Dakota  57104

Fredric M. Brown, Esq.
Attorney for Debtor-Defendant
1001 Office Park Road, Suite 108
West Des Moines, Iowa  50265

Jonathan K. Van Patten, Esq.
Attorney for Debtor-Defendant
Post Office Box 471
Vermillion, South Dakota  57069

     Subject:    ***Tidewater Finance Company v. Daniel A. Nelson (In re Nelson)***
                       Adv. No. 07-4035, Bankr. No. 07-40093

Dear Counsel:

     The matter before the Court is the motion for summary judgment filed by Plaintiff Tidewater Finance Company.[1]  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052.  As discussed below, Plaintiff's motion will be denied.

     **Facts.**  The following facts are taken directly from the "Material Facts" section

---

     [1] The contemporaneous motion for summary judgment filed by Debtor-Defendant Daniel A. Nelson is addressed in a separate letter decision.

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 2

of Plaintiff's motion for summary judgment:[2]

> Nelson was the principal of two related entities, Dan Nelson Auto[motive] Group, Inc. ("DNAG") and South Dakota Acceptance Corporation ("SDAC"). DNAG sold motor vehicles to consumers and facilitated those sales by financing them through installment sales contracts which were sold to SDAC. In turn, SDAC assigned the installment sales contracts to other entities, among whom Tidewater [Finance Company ("Tidewater")] was one.
>
> SDAC sold a large number of installment sales contracts to Tidewater through a series of twenty-four separate Asset Purchase Agreements. A representative Asset Purchase Agreement dated November 1[5], 2004 is attached as Exhibit B [to Plaintiff's motion for summary judgment]. At no time during the business relationship between SDAC and Tidewater before the Attorney General for the State of Iowa commenced the Iowa Action (hereinafter defined) was Tidewater aware or did it become aware that the Contracts SDAC sold to Tidewater were the result of any wrongful conduct.
>
> Nelson was, at all relevant times, the president, a director, and the controlling shareholder of [DNAG] and its captive finance company, [SDAC].
>
> Nelson controlled the policies, sales and practices of DNAG and SDAC, and acting through DNAG, he regularly engaged in the business of making credit sales of used motor vehicles to consumer citizens of Iowa and South Dakota through retail installment sale contracts that reserved security interests in the motor vehicles so sold to secure payment of the purchase prices of the vehicles. In turn, acting through SDAC, Nelson assigned many of those Contracts to Tidewater.
>
> In his corporate capacity, Nelson entered 24 Asset Purchase Agreements with Tidewater dated June 26, November 20, and December 14, 2001, January 24, 2002, February 11, 2002, April 19, 2002, May 17, 2002, June 19, 2002, July 23, 2002, August 26, 2002, September 26, 2002, October 23, 2002, November 25, 2002, June 23, 2003, August 21, 2003, April 8, 2004, May 25, 2004, June 10, 2004, July 22, 2004,

---

[2] Plaintiff's citations to the record are omitted.

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 3

August 3, 2004, August 24, 2004, September 28, 2004, October 28, 2004 and November 22, 2004.  Exhibit B[, attached to Plaintiff's motion for summary judgment,] is representative of all those Agreements insofar as this Motion is concerned.

The Attorney General for the State of Iowa sued Nelson in the District Court for Polk County (the "Iowa Action").  In that action, Nelson consented to the entry of a judgment against him personally in which Nelson acknowledged that the conduct of DNAG and SDAC related to the Contracts assigned by SDAC to Tidewater and others were created "in violation of Iowa Code § 714.16(2)(a) and that he, Nelson, was personally responsible for that conduct as the President of said companies."

Tidewater asserted in the Complaint that Nelson was personally liable for the fraudulent conduct of DNAG and SDAC in creating the Contracts.  Nelson denied that and affirmatively defended on the grounds that he was acting entirely as an officer of SDAC.

As a result of the Iowa Action, the Attorneys General of Iowa and South Dakota negotiated agreements with Tidewater that reduced the liabilities of the consumers who executed the Contracts that SDAC assigned to Tidewater, costing Tidewater $1,774,081.49.  Copies of those Agreements are attached [to Plaintiff's motion for summary judgment] as Exhibits C and D, respectively.

Nelson takes issue with certain of the foregoing facts.  For example, he denies he "exclusively" controlled the policies, sales, and practices of DNAG and SDAC.  He denies he was personally a legal party to the transactions between SDAC and Tidewater.  He denies the judgment entered in the Iowa action contained any admission or judgment that any contract purchased by Tidewater was the result of or affected by any violation of Iowa Code § 714.16(2)(a).  He denies that same judgment contained any admission that he was personally responsible for unspecified violations of Iowa Code § 714.16(2)(a) or the words "personally responsible for [DNAG's or SDAC's] conduct."  He denies Tidewater was a defendant in the Iowa action.  Lastly, he denies Tidewater has suffered the damages it claims to have suffered.[3]

---

[3] Nelson also takes issue with Tidewater's noncompliance with D.S.D. CIV. LR 56.1 of the Local Rules of Practice of the United States District Court for the District of South Dakota, and both parties spent an inordinate amount of time and

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 4

**Law.** Summary judgment is appropriate when "there is no genuine issue [of] material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c). An issue of material fact is *genuine* if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein). A genuine issue of fact is *material* if it might affect the outcome of the case. *Id.* (quotes therein).

The matter must be viewed in the light most favorable to the party opposing the motion. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (quoting therein *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587-88 (1986), and citations therein). Where motive and intent are at issue, disposition of the matter by summary judgment may be more difficult. *Cf. Amerinet*, 972 F.2d at 1490.

The movant meets his burden if he shows the record does not contain a genuine issue of material fact and he points out the part of the record that bears out his assertion. *Handeen v. LeMaire*, 112 F.3d 1339, 1346 (8th Cir. 1997)(quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir. 1988)). No defense to an insufficient showing is required. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346.

If the movant meets his burden, however, the non movant, to defeat the motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). The non movant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations. *Bell*, 106 F.3d 263 (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

By its complaint, Tidewater is asking the Court to conclude its alleged claim against Nelson is nondischargeable under 11 U.S.C. § 523(a)(2)(A). That section excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by "false pretenses, a false

---

effort discussing Local Rule 56.1. However, this proceeding is governed by the Local *Bankruptcy* Rules for the District of South Dakota, which do not include a comparable provision. *United States of America v. Hump* (*In re Hump*), Bankr. No. 05-30175, Adv. No. 05-3009, slip op. at 7 n.3 (Bankr. D.S.D. June 26, 2007).

Re:  *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 5

representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail under § 523(a)(2)(A), Tidewater must prove each of the following elements by a preponderance of the evidence:

1.  Nelson made a representation.

2.  Nelson knew the representation was false at the time it was made.

3.  The representation was deliberately made for the purpose of deceiving Tidewater.

4.  Tidewater justifiably relied on the representation.

5.  Tidewater sustained the alleged loss as the proximate result of the representation having been made.

*Burt v. Maurer* (*In re Maurer*), 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000) (citations omitted) (cited in *Arvest Bank of Huntsville v. Lane* (*In re Lane*), 104 Fed. Appx. 608 (8th Cir. 2004)).

**Discussion.** With respect to the first element, Tidewater points to the following language in the "Representations, Warranties and Covenants" section of the Asset Purchase Agreement dated November 15, 2004, which Nelson signed in his capacity as president of SDAC on November 22, 2004 (the "November 22, 2004 Asset Purchase Agreement"):[4]

> Seller has complied with all Federal and State laws, rules and regulations in regard to the sale of the motor vehicles creating the Contracts and the Contracts themselves.

Tidewater describes the November 22, 2004 Asset Purchase Agreement as "representative" of all the Asset Purchase Agreements. Nelson does not appear to dispute this.

For the purposes of Tidewater's motion, the Court will therefore assume the November 22, 2004 Asset Purchase Agreement is indeed representative of all the Asset Purchase Agreements and will further assume the clause in question appears in

---

[4] Nelson also signed the November 22, 2004 Asset Purchase Agreement as a guarantor.

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 6

each of those Asset Purchase Agreements.[5] The Court will also assume – although it does not decide – Nelson may be considered to have made the statement himself even though he signed the Asset Purchase Agreements in his capacity as president of SDAC. *See Grefe v. Ross*, 231 N.W.2d 863, 868 (Iowa 1975) ("A corporate officer is individually liable for torts which he commits while acting within as well as outside the scope of his employment."); *Bass v. Happy Rest, Inc.*, 507 N.W.2d 317, 320 (S.D. 1993) ("Officers and employees of a corporation are personally liable for intentional torts."). Thus, Tidewater can be said to have established the first element.

With respect to the second element, Tidewater has not pointed the Court to anything in the record to suggest Nelson knew the statement regarding compliance with federal and state law, rules, and regulations was false at the time – or more accurately, at the *times* – it was made. The consent judgment upon which Tidewater relies to establish Nelson's knowledge of the falsity of that statement was entered on January 26, 2007. In paragraph 11 of the consent judgment, Nelson admitted "the conduct of his companies . . . was in violation of Iowa Code § 714.16(2)(a)" and accepted responsibility for the violation as the president of the companies.[6] At that point, he may have known SDAC had not complied with Iowa law in regard to the sale of the motor vehicles creating at least some of the contracts.[7] However, knowing

---

[5] The Court was able to locate only one other Asset Purchase Agreement in the record. That Asset Purchase Agreement, which was dated June 26, 2001 and was signed by Nelson in his capacity as the president of SDAC and as a guarantor on that same date (the "June 26, 2001 Asset Purchase Agreement"), did include the relevant clause.

[6] In its brief, Tidewater mischaracterizes Nelson's admission as an admission of personal wrongdoing, overlooking the plain language of not only paragraph 11 but also paragraph 23 of the consent judgment, which provides, "This Consent Judgment shall not be construed as, or be evidence of, admissions by Daniel A. Nelson of violations of the Iowa Consumer Credit Code or the Iowa Ongoing Criminal Conduct statute." Tidewater also mischaracterizes Nelson's admission as an admission of fraudulent conduct. Section 714.16(2)(a) proscribes various unlawful practices, including fraud but also including "an unfair practice." Nothing in paragraph 11 can reasonably be interpreted as an admission of any particular unlawful practice.

[7] The consent judgment does not identify the specific automobile sales affected by the conduct of Nelson's companies. Tidewater appears to presume the sales identified in each Asset Purchase Agreement were so affected. However, since Nelson's companies did business in both Iowa and South Dakota, it is entirely possible one or more Asset Purchase Agreements may have involved only South Dakota sales not subject to the consent judgment. Neither party has pointed the Court to anything in the record to support a finding one way or the other.

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 7


something in January 2007 is not the same as knowing it on June 26, 2001 (the date of the first Asset Purchase Agreement), November 22, 2004 (the date of the last Asset Purchase Agreement), or any date in between.

    Moreover, while no defense to an insufficient showing is required, it should be noted the only evidence in the record of what Nelson knew or did not know at the time he signed the Asset Purchase Agreements appears to be that provided by Nelson's affidavit, in which he stated:

> At no time prior to December of 2004 ha[d] any court made any finding that any term [or] condition of any SDAC consumer installment contract[ ] violated any law of the State of Iowa, or other state law.
>
> At no time during any negotiations between Tidewater and SDAC was I aware that any material business practice of DNAG was in violation of any federal or state consumer-related law.
>
> At no time during any negotiations between Tidewater and SDAC did I believe that any material business practice of SDAC was in violation of any federal or state consumer-related law, and that any consumer had any claim or defense to payment on any installment contract on the basis of any provable violation of any consumer protection law.

Thus, even if Tidewater had pointed the Court to evidence in the record to suggest Nelson knew the statement regarding compliance with federal and state law, rules, and regulations was false at the times it was made, a genuine issue of material fact would remain.

    Tidewater has not met its burden with respect to this element. Consequently, it cannot prevail on its motion. The Court will enter an appropriate order.

                                   Sincerely,

                                   Charles L. Nail, Jr.
                                   Bankruptcy Judge

cc:    adversary file (docket original and serve parties in interest)

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota