**United States Bankruptcy Court**
**District of South Dakota**

**Charles L. Nail, Jr.**
**Bankruptcy Judge**



_____

Federal Building and United States Post Office                     Telephone: (605) 945-4490
225 South Pierre Street, Room 211                                         Fax: (605) 945-4491
Pierre, South Dakota 57501-2463

June 30, 2008

James R. Sheeran, Esq.
Attorney for Plaintiff
Post Office Box 13306
Chesapeake, Virginia  23325-3306

Steven R. Binger, Esq.
Attorney for Plaintiff
307 West 14th Street
Sioux Falls, South Dakota  57104

Fredric M. Brown, Esq.
Attorney for Debtor-Defendant
1001 Office Park Road, Suite 108
West Des Moines, Iowa  50265

Jonathan K. Van Patten, Esq.
Attorney for Debtor-Defendant
Post Office Box 471
Vermillion, South Dakota  57069

   Subject:  ***Tidewater Finance Company v. Daniel A. Nelson (In re Nelson)***
        Adv. No. 07-4035, Bankr. No. 07-40093

Dear Counsel:

  The matter before the Court is the motion for summary judgment filed by Debtor-Defendant Daniel A. Nelson.[1]  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052.  As discussed below, Debtor-Defendant's motion will be granted.

  **Facts.**  The following facts are taken directly from the Debtor-Defendant's

_____

  [1] The contemporaneous motion for summary judgment filed by Plaintiff Tidewater Finance Company is addressed in a separate letter decision.

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 2

Statement of Undisputed Material Facts:[2]

1. On May 29, 2007 a Complaint was filed by Tidewater Finance Company (hereinafter "Tidewater") seeking to exempt Daniel A. Nelson (hereinafter "Dan Nelson") from discharge of approximately $1,900,00[0] in alleged losses in installment contract purchases.

2. During the period of approximately 2001 through November 22, 2004, Tidewater purchased consumer retail installment contracts from South Dakota Acceptance Corporation (hereinafter "SDAC").

3. Tidewater represents itself as specializing in "purchasing and servicing automobile loans from non-traditional consumers."

4. The phrase "non-traditional consumers" means consumers who would have difficulty obtaining automobile financing on the prime market.

5. At all times material hereto, Tidewater was in the business of purchasing subprime consumer automobile installment contracts from automobile dealers, *Tidewater Finance Company v. Fiserv Solutions, Inc.*, 2001 WL 193617 (4th Cir. 2001)(unpublished), including those who practice the buy-here/pay here business model.

6. Tidewater was, during the time period it purchased contracts from SDAC, familiar with DNAG and SDAC's business model and target customers.

7. Tidewater purchased SDAC retail consumer contracts because of the potential profit Tidewater could derive based upon the high interest rate that remained after purchase discount.

8. Monies paid by Tidewater for the purchased consumer retail installment contracts were not paid to Dan Nelson personally.

9. Dan Nelson was the president of DNAG.

10. Tidewater had actual notice of the allegations raised in the class action lawsuit removed to the U.S. District Court for the Southern

---

[2] Debtor-Defendant's citations to the record are omitted.

Re:  *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 3

District of Iowa entitled Madol, et al[.] v. Dan Nelson Auto Group, et al., SDI No. 03-90259 (hereinafter "Madol") filed on or about May 12, 2003 and the content of the Plaintiffs' allegations in that case.

11. On or about May 13, 2003, Tidewater faxed SDAC a copy of the subpoena duces tecum the Madol Plaintiffs served on Tidewater.

12. Kevin Obal of Tidewater Motor Credit references in his "Notes/History" document an entry for May 19, 2003[,] which references the Madol litigation: "Adv. once again that we need something protecting us from the potential class action."

13. On May 29, 2003, Nelson entity's General Counsel Robert Junso faxed Tidewater a copy of DNAG's proof of insurance to defend the Madol claims.

14. On June 18, 2003, General Counsel Robert Junso faxed Tidewater a copy of a favorable ruling by the Magistrate Judge in the Madol litigation.

15. While the Madol litigation was pending, Tidewater purchased additional consumer installment contracts.

16. The Madol Plaintiff's [sic] moved to file Amended Petition on September 13, 2003 to challenge arbitration (Alternative Dispute Resolution) terms in the consumer installment contracts.

17. Tidewater had actual notice of the decision favorable to Dan Nelson's companies rendered by the Eighth Circuit Court of Appeals in *Madol v. Dan Nelson Automotive Group*, 372 F.3d 997 (8th Cir. 2004)(filed June 24, 2004)[,] which was a matter of public record.

18. The Eighth Circuit held in Madol that the arbitration clause was enforceable even where the Plaintiffs were claiming that the consumer installment contracts were unconscionable. *Madol v. Dan Nelson Automotive Group*, 372 F.3d 997 (8th Cir. 2004).

19. As of June of 2004, Tidewater had notice that SDAC's "Better Business Bureau" rating was "unsatisfactory record due to unanswered complaints."

Re:  *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 4

20.  Prior to on or about September 24, 2004, Dan Nelson had not been put on notice by any governmental entity that any business act, policy or contractual terms used by DNAG or SDAC was in violation of any federal or state consumer-related statute or law.

21.  After the Iowa Attorney General notified Dan Nelson on or about September 24, 2004 that the Attorney General had complaints about the business practices of DNAG and SDAC, Dan Nelson, as President of DNAG and SDAC responded to those complaints and employed legal counsel to resolve the complaints raised.

22.  Prior to October 6, 2004, Dan Nelson provided a copy of the "CID" to J. Tyler Haahr, CFO of MetaBank.  Haahr determined on or about October 6, 2004 that the "CID" was not a "material" circumstance to MetaBank's continued financing of DNAG[,] et al.

23.  After September 24, 2004, Dan Nelson provided Tidewater, through its agents or employees, with actual notice of the general complaints of the Iowa Attorney General.

24.  Tidewater was served a subpoena dated September 27, 2004 from the Iowa Attorney General for documents relating to Tidewater's transactions with "Dan Nelson Finance Super Center."

25.  Counsel for Tidewater responded to the Subpoena by letter dated October 8, 2004.

26.  When Tidewater purchased additional installment sales contracts in October of 2004 and November of 2004, Tidewater had knowledge that the Iowa Attorney General was raising complaints about the business practices of DNAG and SDAC and the terms of SDAC consumer installment contracts of the type Tidewater was purchasing.  Tidewater bought them anyway.

27.  Tidewater knew of the Ohio Attorney General's complaints regarding the JD Byrider business model in October of 2004.

28.  At least from May of 2003 through November of 2004, Tidewater could not have relied upon representations in the Asset Purchase Agreements in October and November of 2004 when they had actual

Re:  *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 5

knowledge that the civil litigants and later the Iowa Attorney General were complaining about the business practices of DNAG/SDAC and the terms of SDAC installment contracts.

29. As of December 1, 2004, Tidewater had not declared a "default" under the terms of any asset purchase agreement in effect or related to any consumer installment contract it had purchased during the period alleged in the Complaint.

30. At no time during the time period alleged in Tidewater's Complaint did Dan Nelson know that the business practices of DNAG and SDAC and SDAC's installment contracts that Tidewater had purchased were unenforceable, or violated any federal or state consumer law or statute, or were the product of any unlawful term or business practice.

31. Despite Tidewater's knowledge of the "Madol" litigation, the Attorney General "CID," the Attorney General's service of a subpoena duces tecum on Tidewater in approximately September of 2004, and the Attorney General's lawsuit against DNAG[,] et al[.] in January of 2005, Tidewater merely requested on January 27, 2005 that CNAC repurchases [sic] two consumer contracts from two customers who had complained to Tidewater.

32. On February 21, 2005 Dan Nelson and Kevin Obal discuss via email their respective conclusions that the consumer accounts are valid, unless and until some court declares otherwise.

33. Despite Tidewater's knowledge of the "Madol" litigation, the Attorney General "CID," the Iowa Attorney General's service of a subpoena duces tecum on Tidewater in approximately September of 2004, Tidewater was soliciting on January 5, 2007 the purchase of more consumer installment contracts from CNAC.

34. After the Iowa Attorney General's lawsuit against DNAG[,] et al[.] in January of 2005 was filed, Tidewater continued to enforce and collect against the consumer installment contracts under the contract terms until their settlement with the Iowa Attorney General in the Fall of 2005.

35. As of August 19, 2005, Tidewater was representing to "consumer advocate" Rosana Olson Hedahl that "The interest rates on the

Re:  *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 6

> installment sale contracts that the Dan Nelson entities assigned to Tidewater are within the ceilings established by applicable Iowa and South Dakota law and are not subject to characterization as usurious."
>
> 36. During the time period that Tidewater purchased consumer installment contracts from SDAC, no court of law had held that the contracts were unenforceable or violated any federal or state law.

Tidewater has not specifically challenged any of the foregoing facts.[3]

**Law.** Summary judgment is appropriate when "there is no genuine issue [of] material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c). An issue of material fact is *genuine* if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein). A genuine issue of fact is *material* if it might affect the outcome of the case. *Id.* (quotes therein).

The matter must be viewed in the light most favorable to the party opposing the motion. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (quoting therein *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587-88 (1986), and citations therein). Where motive and intent are at issue, disposition of the matter by summary judgment may be more difficult. *Cf. Amerinet*, 972 F.2d at 1490.

The movant meets his burden if he shows the record does not contain a genuine issue of material fact and he points out the part of the record that bears out his assertion. *Handeen v. LeMaire*, 112 F.3d 1339, 1346 (8th Cir. 1997)(quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir. 1988)). No defense to an insufficient showing is required. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346.

---

[3] In his brief in support of his objection to Tidewater's contemporaneous motion for summary judgment, Nelson argues each of the foregoing facts is deemed admitted as a result of Tidewater's failure to comply with D.S.D. CIV. LR 56.1 of the Local Civil Rules of Practice of the United States District Court for the District of South Dakota. However, this proceeding is governed by the Local *Bankruptcy* Rules for the District of South Dakota, which do not include a comparable provision. *United States of America v. Hump* (*In re Hump*), Bankr. No. 05-30175, Adv. No. 05-3009, slip op. at 7 n.3 (Bankr. D.S.D. June 26, 2007).

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 7

If the movant meets his burden, however, the non movant, to defeat the motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). The non movant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations. *Bell*, 106 F.3d 263 (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

By its complaint, Tidewater is asking the Court to conclude its alleged claim against Nelson is nondischargeable under 11 U.S.C. § 523(a)(2)(A). That section excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" To prevail under § 523(a)(2)(A), Tidewater must prove each of the following elements by a preponderance of the evidence:

1. Nelson made a representation.

2. Nelson knew the representation was false at the time it was made.

3. The representation was deliberately made for the purpose of deceiving Tidewater.

4. Tidewater justifiably relied on the representation.

5. Tidewater sustained the alleged loss as the proximate result of the representation having been made.

*Burt v. Maurer* (*In re Maurer*), 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000) (citations omitted) (cited in *Arvest Bank of Huntsville v. Lane* (*In re Lane*), 104 Fed. Appx. 608 (8th Cir. 2004)).

**Discussion.** With respect to the first element, Tidewater claims in its brief the following statements appear in each Asset Purchase Agreement:

> DNAG and CNAC complied with all Federal, Iowa and South Dakota laws, rules and regulations . . . in regard to the sales of the motor vehicles identified in each Contract and in the creation of each such Contract; and

Re:  *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 8

> No purchaser of a vehicle identified in a Contract had one or more defenses with respect to the Contract[,] such as set-off, counterclaims, fraud, or violations of state laws pertaining to such Contract.

Nelson does not appear to dispute Tidewater's claim.[4]

For the purposes of Nelson's motion, the Court will therefore assume the above or similar statements appear in each Asset Purchase Agreement. The Court will also assume – although it does not decide – Nelson may be considered to have made those statements himself, even though he signed the Asset Purchase Agreements in his capacity as president of SDAC. *See Grefe v. Ross*, 231 N.W.2d 863, 868 (Iowa 1975) ("A corporate officer is individually liable for torts which he commits while acting within as well as outside the scope of his employment."); *Bass v. Happy Rest, Inc.*, 507 N.W.2d 317, 320 (S.D. 1993) ("Officers and employees of a corporation are personally liable for intentional torts."). Thus, Tidewater will be said to have established the first element.

With respect to the second element, however, the only evidence in the record regarding what Nelson knew or did not know at the times he signed the Asset Purchase Agreements appears to be that provided by Nelson's affidavit, in which he stated:

> At no time prior to December of 2004 ha[d] any court made any finding that any term [or] condition of any SDAC consumer installment contract[ ] violated any law of the State of Iowa, or other state law.
>
> At no time during any negotiations between Tidewater and SDAC was I aware that any material business practice of DNAG was in violation of any federal or state consumer-related law.
>
> At no time during any negotiations between Tidewater and SDAC did I believe that any material business practice of SDAC was in violation of any federal or state consumer-related law, and that any consumer had

---

[4] The Court was able to locate only two Asset Purchase Agreements in the record. The first was dated June 26, 2001 and was signed by Nelson in his capacity as president of SDAC and as a guarantor on that same date. The second was dated November 15, 2004 and was signed by Nelson in his capacity as president of SDAC and as a guarantor on November 22, 2004. Both included statements similar to those in Tidewater's brief.

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 9

> any claim or defense to payment on any installment contract on the basis
> of any provable violation of any consumer protection law.

Tidewater describes Nelson's affidavit as "self-serving," but it is required to do much more than simply offer its opinion regarding that affidavit. As noted above, it must advance specific facts to create a genuine issue of material fact for trial. Tidewater has not done that.

Specifically, Tidewater has not pointed the Court to anything in the record to suggest, contrary to the declarations in his affidavit, Nelson knew the statements in the Asset Purchase Agreements were false at the time – or more accurately, at the *times* – they were made. The consent judgment upon which Tidewater relies to establish Nelson's knowledge of the falsity of those statements was entered on January 26, 2007. In paragraph 11 of the consent judgment, Nelson admitted "the conduct of his companies . . . was in violation of Iowa Code § 714.16(2)(a)" and accepted responsibility for the violation as president of the companies.[5] At that point, he may have known SDAC had not complied with Iowa law in regard to the sale of the motor vehicles identified in the Asset Purchase Agreements.[6] However, knowing something in January 2007 is not the same as knowing it on June 26, 2001 (the date of the first Asset Purchase Agreement), November 22, 2004 (the date of the last Asset Purchase Agreement), or any date in between.

In its brief, Tidewater cites I.C.A. §§ 322.7A(1) and (4) and 322.3(6) and argues – without citing any other Iowa statute or Iowa case law – Nelson is charged

---

[5] In its brief, Tidewater mischaracterizes Nelson's admission as an admission of personal wrongdoing, overlooking the plain language of not only paragraph 11 but also paragraph 23 of the consent judgment, which provides, "This Consent Judgment shall not be construed as, or be evidence of, admissions by Daniel A. Nelson of violations of the Iowa Consumer Credit Code or the Iowa Ongoing Criminal Conduct statute." Tidewater also mischaracterizes Nelson's admission as an admission of fraudulent conduct. Section 714.16(2)(a) proscribes various unlawful practices, including fraud but also including "an unfair practice." Nothing in paragraph 11 can reasonably be interpreted as an admission of any particular unlawful practice.

[6] The consent judgment does not identify the specific automobile sales affected by the conduct of Nelson's companies. Tidewater appears to presume the sales identified in each Asset Purchase Agreement were so affected. However, since Nelson's companies did business in both Iowa and South Dakota, it is entirely possible one or more Asset Purchase Agreements may have involved only South Dakota sales not subject to the consent judgment. Neither party has pointed the Court to anything in the record to support a finding one way or the other.

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 10

with the knowledge that the installment contracts identified in the Asset Purchase Agreements violated Iowa law because DNAG was in the business of used motor vehicle sales and Nelson was trained in that business. The Court disagrees.

The first statute cited by Tidewater provides:

(1) An applicant for a license as a used motor vehicle dealer shall complete a minimum of eight hours of prelicensing education program courses pursuant to this section prior to submitting an application to the department.

. . . .

(4) The Iowa independent automobile dealers association, in consultation with the state department of transportation, the department of education, the attorney general, and the Iowa association of community college trustees, shall develop the prelicensing and continuing education course curricula for the used motor vehicle dealer education program, which shall include but not be limited to examination of federal and state laws applicable to the motor vehicle industry and federal and state regulations pertaining to used motor vehicle dealers. The education program courses shall be provided by community colleges as defined in section 260C.2 or by the Iowa independent automobile dealers association in conjunction with a community college. The department of education shall adopt rules establishing reasonable fees to be charged for the prelicensing education courses and the continuing education courses.

I.C.A. § 322.7A. The second statute cited by Tidewater provides:

A person who is engaged in the business of selling at retail motor vehicles shall not make and enter into a retail installment contract unless the contract meets the following requirements:

a. Every retail installment contract shall be in writing, shall be signed by both the buyer and the seller, and shall be completed as to all essential provisions prior to the signing of the contract by the buyer except that, if delivery of the motor vehicle is not made at the time of the execution of the contract, the identifying numbers or marks of the motor vehicle or similar information and the due date of the first installment may be inserted in the contract after its

Re: *Tidewater Finance Company v. Nelson*
June 30, 2008
Page 11

>    execution.
>
>    b. The contract shall comply with the Iowa consumer credit code, chapter 537, where applicable.

I.C.A. § 322.3(6).

Neither supports Tidewater's position. It is one thing to say Nelson was required to complete eight hours of course work "examin[ing] federal and state laws applicable to the motor vehicle industry and federal and state regulations pertaining to used motor vehicle dealers." It is another thing entirely to conclude Nelson, having completed that course work, should then be charged with sufficient knowledge of federal and state laws and regulations to know – again, at the times the Asset Purchase Agreements were executed – the installment contracts identified in those Asset Purchase Agreements violated Iowa law. This is especially true when the consent judgment does not specify – and Tidewater has not identified – the precise manner in which the installment contracts violated Iowa law.

Tidewater has not advanced specific facts that create a genuine issue of material fact for trial. The Court will therefore enter an order granting Nelson's motion for summary judgment and dismissing this adversary proceeding.

>    Sincerely,
>
>    Charles L. Nail, Jr.
>    Bankruptcy Judge

cc:   adversary file (docket original and serve parties in interest)

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota